# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 20 CV 4752 |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| DEANDRE CHERRY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Deandre Cherry's pro se petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255; motion for leave to amend the § 2255 petition; and second motion for leave to amend the § 2255 petition. For the reasons set forth below, the motions to amend the § 2255 petition are granted, and the § 2255 petition, as amended, is denied.

## BACKGROUND

On May 31, 2012, a man was arrested by Drug Enforcement Agency agents while attempting to take possession of 26 kilograms of cocaine near Chicago's O'Hare Airport. During an interview after the arrest, the man told DEA agents that he was planning to deliver half of the cocaine that night to a man he called "Mo." The arrestee agreed to become a confidential informant ("CI") for the DEA and help the agents execute a sting operation that night to ensnare the dealer down the line. During the ensuing sting operation, "Mo," who was later identified as Deandre Cherry, met the CI in a parking lot in Markham, Illinois, and was arrested mid-deal. The agents ended up seizing from Cherry's Mercedes SUV a satchel containing baggies that later testing confirmed contained 348.1 grams of heroin and 13.7 grams of cocaine base (crack). After Cherry was read his *Miranda* rights, he told the agents that three weeks earlier, the CI had fronted him a half-kilogram of heroin for $31,500.00, but it was low-quality heroin that had resulted in customer complaints, so at the time of his arrest, Cherry was bringing 300 grams of heroin back to the CI to exchange for an equivalent amount of cocaine.

Cherry was charged on June 14, 2012 in a one-count indictment for possessing with intent to distribute more than 100 grams of heroin, in violation of 21 U.S.C. § 841(a)(1). In August 2012, Cherry, through counsel Beau Brindley and Timothy Witczak, filed two pretrial motions to suppress the evidence seized and statements made to the police after the arrest and vehicle search. In the first motion, Cherry argued that the agents lacked probable cause to arrest him, and in the second, he asserted that the agents had no authority to search the satchel within his SUV because the drugs were not in plain view. This Court held an evidentiary hearing in November 2012 and took pre-hearing and post-hearing briefs from the parties. At the hearing,

the Court heard from four law enforcement agents who were involved with the sting, as well as Cherry. The agents testified about the information the CI provided them; the CI's phone calls with Cherry (conversations that were recorded, but not monitored in real time by the agents); their plan for the sting; their surveillance of the meeting between the CI and Cherry; Cherry's arrival at the meeting place; what they observed during the meeting; and Cherry's arrest. Two of the agents testified that after Cherry opened the driver's side door of his SUV in an attempt to flee, they could see through the open door a clear plastic bag containing suspected drugs within the open flap of Cherry's satchel, which was on the front passenger seat. For his part, Cherry testified about the purpose of his meeting with the CI and the circumstances of his arrest. He acknowledged that he had drugs and money in his SUV that day, but stated that the heroin was wrapped in a black plastic bag inside the satchel, which was on the floor of the front passenger area and closed and locked at the time of his arrest. Cherry further stated that he had placed paperwork—car titles—on top of the bag of drugs to give himself the appearance of a legitimate businessman.

This Court issued a memorandum opinion and order on April 11, 2013, denying Cherry's motions. (Case No. 12 CR 415, ECF No. 60.) The Court concluded that there was probable cause to arrest Cherry, given that the meeting of the CI and "Mo" occurred where, when, and in substantially the manner the CI said it would occur; "Mo" was driving the make, model, and color of vehicle the CI said he would be driving; nothing the CI said or predicted was contradicted by the agents' observations; the agents observed Cherry positioning himself in a way that allowed him to look at the narcotics trap in the back of the CI's vehicle; and upon hearing the police announce themselves, Cherry attempted to flee. The Court further concluded that the agents' testimony about the circumstances of Cherry's arrest and the drugs in plain view in Cherry's SUV was substantially consistent and made sense in light of the entire record, and thus there was probable cause to search Cherry's SUV. The Court also agreed with the government's alternative argument that the drugs inevitably would have been discovered by lawful means as part of an inventory search of the vehicle.

In May 2014, Cherry moved for substitution of counsel, and the motion was granted. Andrea Gambino entered her appearance for Cherry, and Brindley and Witczak withdrew. In September 2014, Gambino filed three motions. The first was for reconsideration of the denial of Cherry's motions to suppress. The motion was premised on *United States v. Glover*, 755 F.3d 811 (7th Cir. June 18, 2014), in which the Court of Appeals analyzed probable cause in the context of a confidential informant's tip. In Cherry's second motion, he moved for disclosure of the CI's identifying information, under *Roviaro v. United States*, 353 U.S. 53 (1957). He argued that, in the absence of more information about the CI, the Court's finding of probable cause was not "neutral and based on access to all available information." (12 CR 415, ECF No. 85, Mot. for Disclosure at 4.) Cherry further argued that the CI would be in a position to testify at trial that Cherry did not intend to sell him drugs during their encounter and did not express a willingness to accept drugs from the CI. Cherry moved in his third motion for production of the camera or electronic storage device that contained the metadata for the photographs of the satchel and drugs that were taken at the arrest scene by Task Force Officer Jose Castaneda, one of the agents present. Cherry explained that because one photo depicted the satchel with a closed flap yet others depicted it as open with its contents exposed, and the time stamps on the photos revealed only hours and minutes but not seconds, the metadata was necessary to show in what order the

photographs were taken; if the metadata revealed that the photo of the closed satchel was taken prior to the others, it would contradict the agents' testimony that the drugs were in plain view. The government's response to Cherry's third motion was that the metadata were not available because Castaneda had taken the photos with his personal camera, which he had sold at a yard sale the previous summer, and he no longer had the electronic card that stored the photos. After the Court denied Cherry's motion for production as moot because the information was no longer available, Cherry filed a renewed motion with regard to the metadata, asserting that dismissal of the indictment was warranted because the government had failed to honor its obligation to turn over exculpatory information to him prior to trial, or in the alternative that the Court should suppress the photos and evidence found in Cherry's vehicle based on Castaneda's "bad faith disposal" of material evidence, or that the Court should conduct a hearing to determine whether Castaneda acted in accord with normal police practice when he sold the camera and disposed of the memory card.

In January 2015, Cherry also filed a revised motion for reconsideration of the order denying his suppression motions. In the revised motion, Cherry argued that (1) an enhanced audio recording from the CI's body camera did not support that Cherry had agreed to accept drugs from the CI, or other portions of the agents' testimony; (2) his inability to examine the photographic metadata violated Cherry's Fifth and Sixth Amendment rights and his rights under *Brady v. Maryland*, 373 U.S. 83 (1963); (3) under *Glover*, the omission of identifying information about the CI rendered invalid the Court's finding on probable cause to arrest; and (4) without evidence to justify Cherry's arrest, there was also no probable cause to search his SUV.

After taking briefs, the Court denied Cherry's motions. On Cherry's motions to reconsider, the Court found *Glover* inapposite because the Court was fully informed at the evidentiary hearing about the CI's background and involvement in the arrest. The Court also found that nothing in the audio recording undermined the Court's prior determinations; no evidence supported the contention that the agents anticipated that metadata related to the photos would some day be requested and that they intentionally destroyed it in order to deprive Cherry of it; and probable cause to search the vehicle existed based on plain view of the heroin at the top of Cherry's satchel and as a search incident to arrest, and the drugs inevitably would have been discovered during an inventory search of the vehicle. (12 CR 415, ECF No. 106.) In denying Cherry's motion for disclosure of the CI's identity, the Court determined that Cherry had failed to meet his burden of showing that his need for the information was relevant and helpful to his defense. The Court explained that the government had announced that it would not call the CI as a witness at trial; Cherry had been charged with actual possession of the drugs that were found in his vehicle at the time of his arrest, not the drugs in the CI's vehicle; the CI was not an occurrence witness to the offense with which Cherry had been charged or the possession offense that was anticipated to be charged in a superseding indictment; and Cherry had pointed to no evidence the CI could possibly have in regard to those offenses. (12 CR 415, ECF No. 105.) As for Cherry's motion concerning the photographic metadata, the Court ruled that there was no evidence of bad faith. The Court noted that Cherry had not raised the metadata issue until a year and a half after the Court ruled on the motions to suppress, and that Cherry pointed to nothing to support the farfetched argument that the government had intentionally destroyed evidence in order to thwart future motions. The Court concluded that if defense counsel had not perceived that the evidence would likely be favorable to Cherry, there was no reason for law enforcement

3

or the government to have done so, and the evidence was not exculpatory. (12 CR 415, ECF No. 165.)

Cherry filed an interlocutory appeal of the denial of reconsideration of the order denying his suppression motions. The Court of Appeals dismissed the appeal, stating that a criminal defendant seeking review of the denial of a motion to suppress evidence is a matter that must wait until entry of final judgment before it can be appealed. (12 CR 415, ECF No. 126.)

On December 3, 2015, Cherry was charged in a one-count superseding indictment with possessing with intent to distribute more than 100 grams of heroin and a quantity of crack. On June 24, 2016, Cherry filed a motion pursuant to *Corley v. United States*, 556 U.S. 303 (2009), to suppress the statements he made to law enforcement. He argued that his statements were inadmissible because they were made more than six hours after his arrest and before he was brought before a magistrate judge. The Court denied the motion because Cherry, after his arrest, had sought to cooperate with law enforcement and signed a written waiver of prompt presentment. (12 CR 415, ECF No. 183, Tr. of 6/27/2016 Proceedings at 6.)

The case proceeded to a three-day trial that began on June 27, 2016. The jury convicted Cherry of the single count of the superseding indictment. After trial, Cherry filed a motion for judgment of acquittal or, in the alternative, for a new trial. He challenged the sufficiency of the evidence and reasserted his pretrial arguments pertaining to probable cause, the metadata, and his statements to law enforcement. Cherry also asserted that the Court erred in failing to instruct the jury that its decision with respect to the quantity of drugs he possessed would set the mandatory minimum and statutory maximum for sentencing. The Court denied Cherry's post-trial motion in a written order. (12 CR 415, ECF No. 201.)

Cherry was sentenced to a term of 240 months' imprisonment. He appealed, and was represented on appeal again by Brindley, along with Michael Thompson. Cherry asserted on appeal that (1) the Court erred in denying his suppression motions because there was no probable cause to arrest him or search his vehicle, and (2) the government violated *Brady* by failing to preserve the photographic metadata. The Court of Appeals affirmed, finding that there was probable cause to arrest Cherry; the agents lawfully searched his vehicle; and there was no abuse of discretion in determining that Castaneda's camera was not sold in bad faith. *United States v. Cherry*, 920 F.3d 1126 (7th Cir. 2019).

On August 12, 2020, Cherry filed the instant petition for post-conviction relief. His petition contains seven grounds for relief, six of which are claims of ineffective assistance of counsel. On September 8, 2020, Cherry moved to amend his petition to add an eighth ground for relief in which he argues that the agents lacked probable cause to arrest and search him. The government filed a response to the petition and the motion to amend. The Court grants Cherry's motion to amend his petition to add Ground Eight.

On November 19, 2020, Cherry filed a second motion to amend his petition, seeking to add a ninth ground for relief in which he argues that counsel were ineffective for failing to challenge his career-offender status. The Court will address this motion in a separate section below.

**DISCUSSION**

**A.      Section 2255 Petition**

Section 2255 allows a defendant to move to vacate, set aside, or correct a sentence that was imposed in violation of the Constitution or laws of the United States, was imposed by a court that lacked jurisdiction, was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). A court may deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show" that the defendant is not entitled to relief. *Id.* § 2255(b). Relief under § 2255 "is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013); *see also Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) ("[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process.").

Ineffective-assistance claims are analyzed under the two-part *Strickland* test. *United States v. Lindsay*, 157 F.3d 532, 534 (7th Cir. 1998) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Under *Strickland*, Cherry must show (1) deficient performance, i.e., that counsel's representation fell below an objective standard of reasonableness, and (2) that as a result Cherry was prejudiced, such that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. *See United States v. Jansen*, 884 F.3d 649, 655-56 (7th Cir. 2018). "Because counsel is presumed effective, a party bears a heavy burden in making a winning claim based on ineffective assistance of counsel." *Shell v. United States*, 448 F.3d 951, 955 (7th Cir. 2006) (internal punctuation and citation omitted). A petitioner must identify specific acts or omissions that are alleged to have fallen below professional norms. *Strickland*, 466 U.S. at 690. If one prong of the *Strickland* test is not satisfied, it is unnecessary to reach the other prong. *Id.* at 697.

Because Cherry is proceeding pro se, the Court liberally construes his filings. *See Echols v. Craig*, 855 F.3d 807, 812 (7th Cir. 2017). As will become apparent below, and as the government points out, Cherry's petition largely centers on two issues that have already been extensively litigated: the camera metadata and the credibility of the agents present at his arrest.

**1.     Ground One**

In Ground One, Cherry argues that counsel who represented him for his suppression motions and at the suppression hearing[1] were ineffective for failing to "thoroughly investigate" the details of his arrest and for failing to obtain "crucial evidence" that would have exonerated him. (ECF No. 1, Pet. at 3.) Cherry actually raises several arguments within Ground One; the Court will address each in turn.

---

[1]    Although additional counsel represented Cherry at this stage of the proceedings, Brindley was principal counsel. Cherry refers only to Brindley, so the Court will do the same.

Cherry first contends that Brindley was ineffective for failing to follow his express instructions to request to preserve and inspect Castaneda's camera, subpoena the camera and metadata, and object to Castaneda's use of a personal camera. Cherry also complains that counsel did not follow his instructions to subpoena surveillance videos that may have existed from businesses in the area around his arrest. Cherry fails to provide any details as to when and how he purportedly gave these instructions to counsel. In any event, the arguments have no merit. The Constitution requires an attorney to make a "reasonable" investigation, but not of "every possible factual scenario." *Long v. United States*, 847 F.3d 916, 922 (7th Cir. 2017). "When a petitioner alleges that counsel's failure to investigate resulted in ineffective assistance, the petitioner has the burden of providing the court with specific information as to what the investigation would have produced." *United States v. Lathrop*, 634 F.3d 931, 939 (7th Cir. 2011). Cherry offers no evidence that surveillance recordings from the area of his arrest even existed, and he offers only speculation about what the metadata and recordings would have shown. Moreover, as the Court of Appeals concluded, the photographic metadata would not have made a difference:

> [T]he contents of [Cherry's] vehicle, including the satchel and the drugs within it, would have been discovered in a lawful inventory search once the agents took custody of the vehicle. *This makes any debate about the order in which the photographs were taken and whether the bag was opened or closed irrelevant.*

920 F.3d at 1141 (emphasis added).

Cherry also contends that Brindley was ineffective for failing to subpoena Chicago Police Officer/DEA Task Force Officer Guillermo Gamboa to testify at the suppression hearing. (Gambino called Gamboa to testify at trial, but Brindley did not call him to testify at the suppression hearing.) According to Cherry, Gamboa's testimony would have undermined that of the other agents as to whether the drugs in Cherry's vehicle were in plain view. The Court of Appeals expressly addressed this issue and rejected the contention that Gamboa's testimony undercut that of the other agents who testified about the events leading to Cherry's arrest and the discovery of the drugs:

> After hearing testimony from the agents and Cherry, the court concluded that the drugs were in plain view after Cherry opened the driver's side door to his car while trying to flee. We see no reason not to give deference to this credibility and factual finding. As the district court concluded, the agents' testimony was substantially consistent: they arrested the defendant after he opened the door to his SUV, and through that open door they were able to see the messenger bag with a plastic bag containing a substance the agents reasonably suspected was illegal drugs. The district court concluded that the agents' version of events[] was more likely true than Cherry's, and that any minor discrepancies were immaterial. The district court did not believe Cherry's testimony that he hid the drugs at the bottom of the satchel, below several car titles and then placed the satchel on the floor of the front passenger side of the car. The district court reasoned that a drug dealer coming to exchange drugs would want to minimize his vulnerability and thus the time for the exchange, and therefore would place the drugs where they

6

would be readily accessible. As we have noted, we must accept the district court's credibility determination unless the facts, as testified to by the police officers, were so unbelievable that no reasonable factfinder could credit them.

Cherry does not seem to dispute the prerequisites to the plain view doctrine—that the agents were lawfully in the parking lot and that the incriminating nature of the evidence would have been readily apparent. Cherry argues instead that his version of events is the one to be believed—the drugs were hidden inside the satchel on the floor of the Mercedes where the agents could not have seen them and the agents' reports to the contrary were inconsistent and thus unbelievable. We can make short shrift of this argument. A district court's credibility assessment based on live testimony will not be disturbed unless it is completely without foundation.

Even if we were to perseverate on the inconsistencies in the agents' testimony, none makes it impossible that the drugs were in plain view. At the suppression hearing, Agent O'Reilly testified that Cherry "ran across the parking spot to his vehicle" and opened the drivers' side door, and had his hand and arm inside the car when he was arrested. Agent Brazao testified that although he did not see who opened the door to the SUV, after he secured the informant, he walked back to the SUV one minute after the agents moved in to arrest Cherry, noticed the doors were open, and saw a black satchel and drugs through the open door. Agent Crawford testified that he did not see who initially opened the door, but when he arrived at the SUV, the other agents had already arrested Cherry and he was on the ground and the door was open. Crawford looked into the SUV to make certain there were no other people in the SUV who might be a threat to the agents and saw the satchel and drugs in plain view. Those agents testified consistently at trial. Cherry points accusatorily to Chicago police officer Gamboa's testimony. Officer Gamboa did not testify at the suppression hearing, but he did testify at trial and his testimony was less clear about the door. He testified that Cherry "very quickly tried to get into his vehicle," Tr. 6/28/16 at 390, 391 (R. 179) and that he was handcuffed outside of the vehicle. *Id.* at 391. His testimony about whether the door to the SUV was open or closed, however, was a bit equivocal. Cherry hangs his hat on the fact that Officer Gamboa testified at trial that the agents grabbed Cherry before he could open his car. Gamboa's testimony, however, was not as clear as Cherry presents it to be:

> Gamboa: He tried to go in the car. I tried not to let him go in the car.
> Q. And you grabbed him?
> A. From the shoulders and his arm, yeah.
> Q. So he wasn't in the car at the time that you grabbed him?
> A. No. He was trying to get into the car.
> Q. Door was open?
> A. Trying to open it, yeah.

> Q. Oh, so the door—he hadn't been able to—he wasn't successful in opening the door?
> A. He didn't get in. *If he did open it, I wasn't paying attention.* I was just trying to make sure he didn't get in.
> Q. So you don't recall whether it was open or closed?
> A. *It wasn't open— he didn't get in. Let's put it that way.* He couldn't get his foot in, so it wasn't.
> Q. Okay. So *you don't think it was open*?
> A. *No.*

*Id.* at 391-92 (emphasis ours).

> None of the testimony gives rise to an irreconcilable difference. In fact, none of it is inherently inconsistent. Testimony is not incredible as a matter of law
>
>> only because the witness may have been impeached by certain discrepancies in [her] story, by prior inconsistent statements, or by the existence of a motive to provide evidence favorable to the government. To find a witness's testimony to be incredible as a matter of law, it must have been physically impossible for the witness to have observed that which he claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all.
>
> [*United States v.*] *Contreras* , 820 F.3d [255], 264 [(7th Cir. 2016)].
>
> The district court certainly did not err by accepting the testimony of the three agents who were clear on the matter that the door was open allowing the agents to view the drugs in plain view on the seat. This was particularly true after the suppression hearing when the district court had only the testimony of Agents Brazao, Crawford and O'Reilly to consider. But this was also true even when the court reviewed the post-trial motion for acquittal. We cannot say that no reasonable jury could have concluded that the door was open and the drugs in plain view. We see no reason to disturb the credibility and factual findings of the district court on the motion to suppress and certainly no reason to upset the jury's conclusion.

*Cherry*, 920 F.3d at 1138-39 (some citations and internal punctuation omitted).[2] Thus, even if Brindley had called Gamboa to testify at the suppression hearing, the testimony would not have affected the Court's conclusions on probable cause. Cherry's attempts to revisit his arguments

---

[2] The Court of Appeals also noted that the agents' testimony "was inconsistent as to whether Cherry parked directly next to the informant's car, one parking spot away, or one-and-a-half parking spots away," but found that discrepancy to be "immaterial." *Id.* at 1130 n.1.

8

that the agents lacked credibility are unpersuasive; he does not present any new evidence that calls into doubt the conclusions of this Court and the Court of Appeals.

Next, Cherry argues that Brindley was ineffective for failing to move to reopen the suppression hearing to seek to present the camera metadata or to present the argument that Castaneda acted in bad faith by using his personal camera to take photographs at the scene and by selling it after the suppression hearing. As discussed above, Cherry merely speculates about what the metadata would have shown, and it ultimately would have been irrelevant given that there were other avenues for admission of the drugs. Furthermore, following the suppression hearing, Gambino filed both pretrial and post-trial motions related to the metadata and alleged bad faith, and the issues were also raised on direct appeal. The metadata arguments have been litigated and rejected numerous times, and Brindley's having filed motions premised on those issues would not have changed the outcome.

Cherry's next contention is that the inevitable discovery doctrine does not apply here. The Seventh Circuit concluded that this Court correctly held in the alternative that the drugs would have been admissible under this doctrine because once Cherry was arrested, the agents "would have removed his car from the parking lot and it would have been subject to an inventory search, as is the usual protocol." 920 F.3d at 1140. Cherry maintains that his SUV was on private property and the government had no interest in seizing or intent to seize it, so the agents had no authority to relocate the vehicle or conduct an inventory search. This argument was not raised at trial or on appeal, and Cherry does not explicitly characterize it as one of ineffective assistance. To the extent Cherry directly raises the argument, it is procedurally defaulted and thus barred from collateral review unless he can demonstrate cause for the default and actual prejudice from the failure to appeal or that enforcing the default would lead to a fundamental miscarriage of justice. *See Hinton v. United States*, No. 15 C 752, 2015 WL 1943261, at *3 (N.D. Ill. Apr. 29, 2015). Cherry fails to do so. Even when Cherry's placement of this argument within Ground One is viewed liberally as an assertion of cause due to ineffective assistance, the argument is waived for lack of development. *See United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003) (arguments that are unsupported by pertinent authority are waived, even where constitutional issues are raised). Cherry cites no authority for the proposition that the agents were not permitted after his arrest to follow the "usual protocol," as the Court of Appeals put it, of removing his vehicle from the parking lot and performing an inventory search. The argument is meritless in any event. Agent Brazao testified at the suppression hearing that the agents did not want to leave Cherry's SUV in the parking lot due to a concern that someone would steal or damage it. 920 F.3d at 1140. Cherry makes a conclusory attempt to contrast a private parking lot with a street, but the need to protect the vehicle would have been the same under either circumstance. "Warrantless inventory searches of vehicles are lawful if conducted pursuant to standard police procedures aimed at protecting the owner's property—and protecting the police from the owner's charging them with having stolen, lost, or damaged his property." *United States v. Pittman*, 411 F.3d 813, 817 (7th Cir. 2005).

Cherry also asserts that Brindley operated under a conflict of interest because he was "federally indicted." (Pet. at 14-15.) Cherry does not provide any more detail, but speculates that "perhaps this is the reason counsel failed to ask for" or seek to preserve the camera or metadata, or to call Gamboa as a witness at the suppression hearing. (*Id.* at 12, 15.) Brindley

9

represented Cherry from July 26, 2012 through May 20, 2014, and again on appeal, from late September 2017 through 2019. This period of time did not overlap at all with the time during which Brindley was under federal investigation and indictment, so there was no conflict with respect to that proceeding.[3] The government points out, however, that there is another potential conflict of interest because Brindley was also the subject of a contempt order issued in the Central District of Illinois in December 2012, which was vacated by the Court of Appeals in October 2013. *See United States v. Britton*, No. 10-CR-20090, 2012 WL 6047983, at *1 (C.D. Ill. Dec. 5, 2012), *vacated and remanded*, 731 F.3d 745 (7th Cir. 2013). To establish a violation of the Sixth Amendment right to conflict-free counsel, a defendant must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. *United States v. Lewisbey*, 843 F.3d 653, 657 (7th Cir. 2016). The contempt matter never resulted in an actual conflict of interest for Brindley, because it was never referred to a United States Attorney's Office for investigation or prosecution. *Bentley v. United States*, No. 17-01102-JES, 2018 WL 4635023, at *6 (C.D. Ill. Sept. 27, 2018). Furthermore, there is no indication that any conflict had an adverse effect on Brindley's representation of Cherry. In 2012 and 2013, Brindley filed the motions to suppress and pre-hearing reply brief; represented Cherry at the suppression hearing; and filed post-hearing briefs. Cherry recycles his arguments about counsel's purported inadequacies, discussed above, and speculates that they are attributable to a conflict. But, even assuming for purposes of discussion that there was an actual and not merely potential conflict, Cherry fails to demonstrate that it altered the outcome of the proceedings. *See id.* at *7 (rejecting a similar argument regarding Brindley's contempt proceedings).

Cherry's final argument in Ground One is that his sentence was imposed in violation of the Constitution because there was no probable cause to arrest him or search his vehicle. Cherry reiterates his criticisms of the agents' testimony about their corroboration of information provided by the CI and about what occurred before Cherry arrived to meet the CI. These contentions were previously raised and rejected at the trial and appellate levels. "[A] section 2255 motion is not an occasion to rehash arguments that were or could have been raised on appeal." *United States v. Riney*, No. 15 C 1155, 2015 WL 4880919, at *3 (N.D. Ill. Aug. 14, 2015); *see also Vinyard v. United States*, 804 F.3d 1218, 1227 (7th Cir. 2015) (issues raised on direct appeal may not be reconsidered on a § 2255 motion absent changed circumstances). As the Court of Appeals noted, the CI was not an anonymous tipster; he cooperated with the agents after his arrest and throughout the sting operation; he knew when and where "Mo" would arrive, what he looked like, and what kind of vehicle he would be driving; he provided the agents a confirmatory signal after meeting with "Mo"; and Cherry then attempted to flee. 920 F.3d at 1135-37. Because the "agents had multiple pieces of detailed information from an informant who was implicating himself in a drug deal—information corroborated as the predictions came true," there was probable cause to support Cherry's arrest. *Id.* at 1137. Cherry offers no basis for revisiting these issues; the governing law has not changed, and Cherry does not identify any new evidence that might affect the outcome.

---

[3] Brindley was notified in July 2014 that he was under federal investigation. *United States v. Smith*, 771 F.3d 1045, 1046 (7th Cir. 2014). He and Thompson were indicted on various charges relating to subornation of perjury. After a bench trial in August 2015, they were found not guilty of all charges. (14 CR 468, N.D. Ill.)

Ground One does not entitle Cherry to relief.

   2.   **Ground Two**

Cherry asserts in Ground Two that his counsel were ineffective for failing to follow his instructions to file a motion to direct the Court's attention to its "erroneous interpretation" and "manipulation" of the record in its ruling on the suppression motions. (Pet. at 23-32.) Cherry says that because there were inconsistencies in the agents' testimony at the suppression hearing, Brindley and Gambino should have filed a motion pointing out to the Court that its ruling was wrong. (In fact, Gambino did file such a motion.) Ground Two is simply another iteration of Cherry's unpersuasive argument that the agents' testimony concerning the events that transpired with the CI prior to Cherry's arrest lacked credibility. Cherry does not present any new evidence that calls into doubt the conclusions of this Court and the Court of Appeals, and he does not demonstrate any deficiency in counsel's performance in this regard.

   3.   **Ground Three**

Ground Three is similar to Ground One, except that here, Cherry focuses on Gambino. First, Cherry claims that she was ineffective for failure to have a trial strategy. He says that during trial, he asked Gambino about her strategy, and she replied that she did not have one. He further argues that he believes that Gambino was "compromise[d]" because she "was a person of interest in[] a federal investigation." (Pet. at 33.) Cherry also provides a laundry list of Gambino's other alleged errors: she did not file an "affidavit alleging what the true facts are"; disregarded Cherry's instruction to accept a particular juror who said that he read the Bible every day; did not file a timely motion based on *Corley*; did not seek to obtain the notes of Agent O'Reilly; was initially reluctant to call Officer Gamboa as a witness and, according to Cherry, did so only because Cherry insisted; failed to object to "jury instruction #13"; and failed to object to Agent O'Reilly's "misconduct," which included "moving the evidence in and out" of the courtroom and "sitting at the prosecution table prior to" testifying. (Pet. at 33-38.) The Court agrees with the government that these allegations are incorrect, unsupported, or would not have changed the outcome of the trial.

Cherry provides no facts to support his contention that Gambino operated under a conflict of interest here due to a federal investigation during the relevant time frame. As the government notes, Gambino was a person of interest in two investigations that well predated her representation of Cherry, which began in May 2014. *See Lafuente v. United States*, 617 F.3d 944, 946 (7th Cir. 2010) (conflict issue arose from investigation that was resolved in the early 2000s); *United States v. Lewellen*, No. 09 CR 332-2, 2015 WL 13849170, at *1 (N.D. Ill. July 31, 2015) (conflict issue arose during trial in January 2012). The government states that it is unaware of a conflict that coincided with Gambino's representation of Cherry, and Cherry provides only an unsupported assertion, so further investigation is not warranted. *See Lafuente*, 617 F.3d at 946.

Regarding the purported lack of trial strategy, even taking as true Cherry's allegation about Gambino's statement, the record shows that Gambino did have a strategy and did mount a vigorous defense in the face of what amounted to formidable evidence against Cherry—the

circumstances of his arrest, the discovery of the drugs, and his post-arrest statements. Gambino filed extensive pretrial and post-trial motions, and she called witnesses at trial and presented argument in an attempt to demonstrate that the agents lacked credibility. Those were strategic decisions that Cherry fails to show fell outside the wide range of professional assistance. Her efforts were unsuccessful, but that does not mean that her assistance was constitutionally ineffective. *See United States v. Wilks*, 46 F.3d 640, 644 (7th Cir. 1995). The avenues for defense were quite limited, and Cherry fails to suggest any alternative strategy that would have changed the outcome of the case.[4] Likewise, Cherry fails to demonstrate that counsel's jury-selection strategy was ineffective simply because she disregarded Cherry's instruction to accept a particular juror. Cherry cites no authority for the proposition that counsel was required to follow his instruction, nor does he develop his argument to indicate how counsel's rejection of the juror fell below a standard of reasonableness. Cherry also complains that Gambino disagreed with him about calling Officer Gamboa as a witness at trial, but he concedes that she did call him, and does not explain how any prejudice arose from their initial disagreement.

Cherry fails to demonstrate that he is entitled to relief with respect to the remaining alleged errors. Cherry contends that Gambino failed to file a "timely" *Corley* motion. The *Corley* motion was filed on the eve of trial, but Cherry fails to explain how an earlier filing would have changed the outcome of the case. The issue of the factual affidavit also relates to the *Corley* motion. Shortly before trial began, the Court told counsel that if Cherry's motion was truly based on a factual dispute in that Cherry was asserting that he did not in fact tell the agents that he wanted to cooperate with them (contrary to the agents' report), the motion should have been accompanied by an affidavit from Cherry. Although Cherry now says in his petition that he "never asked to cooperate," (Pet. at 33), he fails to argue that he told Gambino so, and he also fails to explain what facts should have been included in an affidavit or how it would have changed the outcome of the case.

Cherry also faults Gambino for not having sought Agent O'Reilly's "alleged notes." (*Id.* at 34.) Cherry asserts that O'Reilly "presented false testimony to the Court and jury," but he does not elaborate on what notes he may be referring to, what they would have revealed, or how they would have changed the outcome of the case. The same is true of Cherry's complaint that Gambino failed to object to O'Reilly's handling of evidence or his presence at the prosecution's table prior to testifying at trial. Aside from vague speculation that O'Reilly engaged in "misconduct," Cherry fails to develop any argument as to how either event prejudiced him.

Lastly, Cherry maintains that Gambino was ineffective for failing "to object to jury instruction #13." (*Id.* at 36.) Cherry also states that counsel should have "explore[d]" this instruction and that "withdrawing" the instruction rendered his trial unfair, (*id.*), so it is unclear whether he is contending that Gambino should have offered an instruction or objected to one of

---

[4] Cherry does contend in his reply brief that counsel should have raised "an entrapment defense," (ECF No. 19, Reply at 29), but arguments raised for the first time in a reply brief are waived. *Fernandez v. United States*, 197 F. App'x 513, 514 (7th Cir. 2006). Nevertheless, the facts in this case would not support such a defense.

the government's proposed instructions.  The argument is undeveloped (and unclarified in Cherry's reply), so it is waived.

None of the arguments Cherry raises in Ground Three entitle him to relief.

### 4. Ground Four

Cherry maintains in Ground Four that trial and appellate counsel were ineffective for failing to argue at sentencing and on appeal that his conviction for possession of a machine gun did not qualify as a predicate "crime of violence" that could support sentencing enhancements under the career-offender guideline or 21 U.S.C. § 851.

The career-offender guideline, U.S.S.G. § 4B1.1, provides that a defendant who was at least eighteen years old at the time of the instant offense of conviction, as was Cherry, is a career offender if the instant conviction is a felony controlled-substance offense and the defendant has at least two prior felony convictions of either a "crime of violence" or a controlled-substance offense.  As set out in the Presentence Investigation Report ("PSR"), Cherry's criminal history included the following felony convictions in Cook County, Illinois: attempted murder, in October 1994, Case Number 93 CR 1225201; armed robbery, in October 1994, Case Number 93 CR 1225101; manufacture/delivery of 15 to 100 grams of cocaine, in October 2003, Case Number 03 CR 0020101; and possession of a machine gun, in October 2003, Case Number 03 CR 0020101. (12 CR 415, ECF No. 190, PSR at 10-12.)  The probation officer stated in the PSR that Cherry was a career offender because he had "at least two prior felony convictions of either a crime of violence or a controlled substance offense (Cook County Case Nos. 93CR1225201; 93CR1225101; and 03CR0020101)." (*Id.* at 8.)  The probation officer did not specify which 2003 offense was the qualifier, but since there is a reference to a "controlled substance offense" and the other two offenses were crimes of violence, the drug offense appears to be the qualifier.  Cherry's repeated contention that he "was never sentenced under any drug charge," (Pet. at 40), and that the PSR does not "describe or cite" an Illinois drug charge, (Reply at 32), is simply contradicted by the record.  In addition, there are still two remaining convictions for crimes of violence—attempted murder and armed robbery—that supported application of the career-offender enhancement. The record also shows that the machine-gun conviction was not used as a qualifier for the application of § 851.  On June 20, 2012, the government filed a pretrial notice pursuant to § 851 stating its intent to seek an enhanced sentence based on the 2003 conviction for "manufacture/delivery of a controlled substance," (12 CR 415, ECF No. 14), not the machine-gun conviction.  The PSR also expressly refers to the government's notice of "Information Stating Previous Drug Conviction to be Relied Upon in Seeking Increased Punishment, pursuant to 21 U.S.C. § 851(a)." (PSR at 4.)

Because this claim is meritless, Cherry cannot show that counsel was ineffective for failing to raise it at the trial or appellate level.

### 5. Ground Five

In Ground Five, Cherry contends that trial and appellate counsel were ineffective for failing to "follow [Cherry's] express instructions to file a motion pointing out to the Court,

fabrication that was presented in the record." (Pet. at 44.) Cherry includes several lengthy excerpts of the agents' testimony, and he maintains that because the agents testified about details that are "physically impossible" and do not "line up consistently," the Court must as a matter of law "deem O'Reilly and his fellow officers as incredible." (*Id.* at 45-54.) This claim is another permutation of Cherry's oft-repeated argument that the agents who testified at his suppression hearing and trial were not credible.

To have obtained relief in this regard, counsel would have had to demonstrate that there was false testimony, the government knew or should have known it was false, and there was a likelihood that the false testimony affected the judgment of the jury. *United States v. Cardena*, 842 F.3d 959, 976-77 (7th Cir. 2016). Cherry has pointed to what are, at most, small discrepancies in the agents' accounts of what occurred during the sting. "[M]ere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." *Id.* at 978. Cherry's contentions that the agents could not possibly have observed the events about which they testified are unpersuasive. The agents were present at the scene and participated in Cherry's arrest, and their testimony did not defy the "laws of nature," as Cherry asserts. (Pet. at 58.) As discussed above, Cherry's counsel challenged the agents' credibility at both the trial and appellate levels; the arguments were rejected. Any claim of perjury would have failed as well. Cherry does not present any new evidence or argument; he simply indicates his disagreement with the courts' conclusions. His claim that counsel was ineffective for failing to advance a claim of perjury is without merit.

## 6.     **Ground Six**

Cherry argues in Ground Six that trial counsel was ineffective for "opening the door to allow incriminating evidence before the jury" that, according to Cherry, "caused a conviction," and for failing to pursue the "right to cross-examine" the CI. (*Id.* at 60.) On cross-examination of Agent Brazao, counsel asked the agent questions about what he had told the CI; the recording device that was given to the CI; what was expected to happen in the parking lot during the sting; and what the interior of the CI's car looked like. (12 CR 415, ECF No. 184, Tr. of 6/28/2016 Proceedings at 203, 210-12, 217.) The Court ruled that this questioning opened the door to inquiries of Agent Brazao about the circumstances under which the arrestee became a CI and about the agents' communications with CI. (*Id.* at 231-35.)

Cherry contends that Gambino rendered ineffective assistance by failing to attempt to call the CI as a witness at trial after opening the door to this testimony, because, according to Cherry, the government's "entire case rest[ed] solely on the word of an unauthorized, unreliable[] - as a matter of law - informant." (Pet. at 61.) Cherry fails to address, however, the basis for this Court's ruling on counsel's motion for disclosure of the CI's identity. As discussed above, Cherry was charged with possessing the drugs that were in his own vehicle when he was arrested, not the drugs that were in the CI's vehicle. The evidence was that during the brief meeting between the CI and Cherry, Cherry entered the CI's vehicle, but the CI did not enter Cherry's vehicle. The CI was not a witness to offenses with which Cherry was charged, and Cherry still points to no evidence that the CI would possess that would be relevant to those offenses. Furthermore, Cherry admitted to the agents in his post-arrest statement that he was meeting with the CI to return poor-quality heroin and discuss a swap for cocaine.

14

As the government notes, Cherry's argument is essentially that the CI's testimony would have been relevant to impeach the agents' credibility. But Cherry is unaware of what the CI would have said; he relies on sheer speculation to imply that the CI would have contradicted the agents on any material point. Cherry has therefore failed to demonstrate that counsel's performance was deficient for failing to further pursue the CI's identity or for failing to attempt to call the CI as a witness at trial. A lawyer's decision on whether to call a witness is a strategic decision generally not subject to review. *United States v. Best*, 426 F.3d 937, 945 (7th Cir. 2005). It was reasonable for counsel not to have sought testimony from the CI; he very well could have testified consistently with the agents or offered damaging information about his relationship with Cherry, and he would not have been able to provide any relevant and admissible evidence about the crux of the case—the presence of the drugs in Cherry's SUV.

### 7. Ground Seven

In Ground Seven, Cherry asserts that this Court "improperly interjected" itself into a dialogue at sidebar and "assumed [the] role of prosecutor," thus violating Cherry's right to a fair trial. (Pet. at 67.) Cherry does not assert ineffective assistance of counsel in this claim, which is procedurally defaulted because Cherry does not show cause for and prejudice from the failure to raise it on direct appeal.

Procedural default aside, Cherry cannot show that the sidebar affected the outcome of the case. The dialogue, which occurred during defense counsel's recross-examination of Agent O'Reilly, is as follows:

> BY MS. GAMBINO:
> Q: We have to rely on your report of what happened in that car, isn't that correct?
> [PROSECUTOR] MS. FERNANDEZ-HARVATH: Objection, Your Honor.
> THE COURT: Sustained.
> MS. GAMBINO: May I be heard at sidebar, Your Honor?
> THE COURT: Sure.
> (Proceedings at sidebar on the record. Defendant present.)
> . . .
> MS. GAMBINO: What is the basis for the objection?
> THE COURT: Well, you're asking a hypothetical question. You're asking him "we." First of all, I don't know who "we" is. You? Them? Everyone? The jury? Second, "We have to rely," I don't know what people rely on. I mean, ask him facts. Ask him what he did. Ask him if there was a report. Ask him if there's anything other than his testimony. All those things you can ask him, but don't ask him what we have to rely upon. That's subjective, it calls for speculation, and nobody really knows exactly what it means. That's the objection. Was that your objection?
> MS. FERNANDEZ-HARVATH: Yes, Your Honor.
> THE COURT: Okay. And it's sustained.
> (End of proceedings at sidebar.)

15

(12 CR 415, ECF No. 179, Tr. of 6/28/2016 Proceedings at 325.) Cherry argues that this Court "abandon[ed its] role of impartiality[] and played the role of the prosecutor" by stating the basis for its ruling before the prosecutor could provide the basis for her objection. (Pet. at 67.) In conclusory fashion, Cherry further argues that his defense was "seriously prejudiced" and that the jury was left with the impression that "defense counsel was incompetent." (*Id.* at 67-68.) Dozens of sidebars and rulings on objections occur during any given trial. Cherry fails to explain how he possibly could have been prejudiced given the brevity of the exchange and, most importantly, that it occurred at sidebar—out of earshot of the jury.

Ground Seven does not warrant relief.

### 8. Ground Eight

Cherry contends in Ground Eight that the agents lacked probable cause to arrest and search him. (ECF No. 6, Mot. to Amend, at 2.) He argues that law enforcement "lacked the corroboration" of the CI's claims and thus that there was no probable cause for his arrest, and furthermore that the drugs should have been suppressed as fruits of an illegal arrest. (*Id.* at 6.) Cherry's probable-cause argument is not asserted as an ineffective-assistance claim, and he does not otherwise argue cause and prejudice, nor does the argument appear to differ from that which was raised and rejected at the trial and appellate levels. A § 2255 motion is not a recapitulation of a direct appeal, and there are no changed circumstances, so the issue may not be reconsidered at this stage. *See Vinyard*, 804 F.3d at 1227; *Varela v. United States*, 481 F.3d 932, 935-36 (7th Cir. 2007).

### B. Petitioner's Second Motion to Amend

On November 19, 2020, the Court received Cherry's second motion to amend his § 2255 petition, in which Cherry seeks to add a ninth claim. The motion is dated November 11, 2020, which was five days before the deadline for the government's response to Cherry's petition. Therefore, the government did not receive the motion in time to include in its brief a response to the proposed Ground Nine. The Court later ordered supplemental briefing.

In contrast with Cherry's first motion to amend his petition, Cherry's second motion was filed after the statute of limitations expired.[5] To be a permissible amendment and "relate back" to the original petition, Ground Nine must be based on a "common core of operative facts" as Cherry's original claims. *See Beason v. Marske*, 926 F.3d 932, 938 (7th Cir. 2019). An amendment does not relate back merely because it relates to the same trial, conviction, or sentence as the timely-filed claims. *Id.* Here, relation back is debatable. Cherry argues in Ground Four that counsel were ineffective for failing to contest his conviction for possession of a machine gun as a predicate for enhancing his sentence under the career-offender guideline or § 851. Ground Nine relates broadly to this ground in that Cherry argues that defense counsel were ineffective for failing to contest his status as a career offender, yet for a different reason. Cherry

---

[5] The United States Supreme Court denied Cherry's petition for certiorari on October 7, 2019, making Cherry's conviction final and beginning the one-year period for filing a § 2255 petition.

16

now contends that his 1994 conviction for attempted murder does not qualify as a predicate for application of the career-offender enhancement, because after serving his sentence for that offense, he received a letter from the Illinois Department of Corrections ("IDOC") stating that his civil rights had been restored. Arguably, Ground Nine is based on a different core of operative facts than Ground Four, but for purposes of discussion, the government presumes that the two grounds are sufficiently related. Without deciding the issue, the Court will presume the same and will grant Cherry's second motion for leave to amend his petition.

Cherry relies primarily on *Buchmeier v. United States*, 581 F.3d 561 (7th Cir. 2009), in which the Seventh Circuit held that an IDOC notice qualified as a restoration of civil rights and thus that the petitioner Buchmeier's prior burglary convictions could not count toward an enhancement under the Armed Career Criminal Act ("ACCA"), under the plain language of 18 U.S.C. § 921(a)(20).[6] There are two problems with Cherry's argument. First, Cherry claims to have received the same IDOC notice that was sent in *Buchmeier.* But he does not submit any evidence to support this allegation. Unlike Buchmeier, Cherry fails to submit a copy of the letter he purportedly received. Instead, he contends that a handful of Seventh Circuit decisions discussing IDOC's general policy of sending restoration-of-rights notices during the relevant time frame constitute "proof" that Cherry himself received such a letter. (ECF No. 14, 2d Mot. to Amend at 5.) The Court is unpersuaded. Cherry must show that his civil rights were restored with respect to this conviction, and he fails to do so by relying solely on a recollection that he received an IDOC notice. *See Lacey v. United States*, No. 10 C 4177, 2011 WL 3882781, at *3 (N.D. Ill. Sept. 2, 2011) (finding that petitioner failed to meet his burden of demonstrating that his rights had been restored where, like Cherry, he failed to produce an IDOC document and simply relied on quoting the text of the *Buchmeier* notice); *United States v. Shields*, 789 F.3d 733, 750 (7th Cir. 2015).

The second and more significant problem with Ground Nine is that even if Cherry had submitted sufficient evidence that his rights were restored with respect to the attempted-murder conviction, Cherry's argument is based on inapposite case law. *Buchmeier* and similar decisions pertain to predicate crimes for sentence enhancements under the ACCA. But Cherry was not sentenced under the ACCA; he was sentenced as a career offender under U.S.S.G. § 4B1.1. Under note 10 to § 4A1.2,[7] sentences resulting from convictions as to which a defendant had his civil rights restored are to be counted in computing criminal history. U.S.S.G. § 4A1.2 cmt. n.10. Therefore, even if Cherry had received a restoration-of-rights notice with regard to his conviction for attempted murder, the conviction would nonetheless count toward his career-offender status under the Guidelines. *See Pigee v. United States*, No. 13-CV-1155-DRH, 2016 WL 304863, at *3 (S.D. Ill. Jan. 26, 2016); *United States v. Miller*, No. 08 CR 629, 2010 WL

---

[6] The relevant provision states in pertinent part that any conviction "for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." 18 U.S.C. § 921(a)(20).

[7] The provisions of § 4A1.2 apply to the counting of predicate convictions for purposes of § 4B1.1. *United States v. Womack*, 610 F.3d 427, 430 n.4 (7th Cir. 2010) (citing U.S.S.G.§ 4B1.2 cmt. n.3).

4962808, at *7 (N.D. Ill. Dec. 1, 2010), *aff'd in part and vacated in part on other grounds*, 673 F.3d 688 (7th Cir. 2012). Accordingly, Cherry's counsel were not ineffective for failing to raise this issue.

### C. Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability when it enters a final order adverse to the petitioner. The Court declines to issue a certificate of appealability. A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). Cherry has failed to show that reasonable jurists (1) would find this Court's assessment of the constitutional claims "debatable or wrong," or (2) would find it debatable "whether the petition states a valid claim of the denial of a constitutional right" and "whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

### CONCLUSION

Deandre Cherry's motion for leave to amend his § 2255 petition [6] is granted. Deandre Cherry's second motion for leave to amend his § 2255 petition [14] is granted. Deandre Cherry's petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [1], as amended, is denied. The Court declines to issue a certificate of appealability. Civil case terminated.

**DATE:** May 3, 2021

*[signature]*

**Hon. Ronald A. Guzmán**
**United States District Judge**

18